## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **STEVEN CURRY, #R09761,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **Case No. 3:20-cv-01137-SMY** |
| | ) | |
| **KIMBERLY BUTLER,** | ) | |
| **TODD BROOKS,** | ) | |
| **GAIL WALLS,** | ) | |
| **MOHAMMED SIDDIQUI,** | ) | |
| **WEXFORD HEALTH SOURCES, INC.,** | ) | |
| **and JOHN TROST,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Steven Curry, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Pontiac Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center ("Menard"). This case is now before the Court for preliminary review of the First Amended Complaint (Doc. 20) under 28 U.S.C. § 1915A. Any portion of the First Amended Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

### The First Amended Complaint

Plaintiff makes the following allegations in the First Amended Complaint (Doc. 1): Prior to entering IDOC, Plaintiff was stabbed in the heart and underwent emergency open heart surgery. After entering IDOC, Plaintiff did not have any issues until he was transferred to Menard. At Menard, he began experiencing shortness of breath, tightness in his chest, weakness throughout his body and painful headaches. Plaintiff described his symptoms to a nurse during a sick call visit

and told her that unsanitary cell conditions were triggering his symptoms. The nurse confirmed that he had an unusual heart rate and told him she would put him in to see Dr. Trost.

Dr. Trost confirmed that Plaintiff had an irregular heartbeat and told him that further testing was needed. Plaintiff informed Dr. Trost that he was living in unsanitary cell conditions including extreme temperatures of 90 to 100 degrees, a lack of proper ventilation, and soiled pillows and mattresses. Dr. Trost told Plaintiff he would submit a request for Plaintiff to be referred to an outside facility for testing and would contact the administration about Plaintiff's placement in a sanitized cell.

Plaintiff continued to be housed in a cell with poor ventilation, poor air quality, dust, rust, mold, pepper spray residue, soiled pillows, and torn mattresses. He was double-celled in a cell that was too small for two individuals. He was not provided with any cleaning supplies. Warden Butler was aware of these issues.

Plaintiff filed an emergency grievance regarding the lack of medical treatment for his serious heart condition, which was granted expedited review by Warden Butler. Plaintiff was subsequently seen by Dr. Trost, who told him Wexford had denied the request for further testing. Dr. Trost told him the state doesn't care about inmates' healthcare unless they are literally dying. Plaintiff reminded Dr. Trost that he was living in unsanitary cell conditions that were impacting his breathing and needed Dr. Trost to make a recommendation to the administration. Dr. Trost responded that Menard has over 3,000 inmates and cannot satisfy everyone.

After the discussion with Dr. Trost, Plaintiff contacted his mental health case worker concerning his health condition and the unsanitary cell conditions. Although his issues were documented, no steps were taken to correct the situations. He wrote another grievance to Warden Butler and wrote to the Administrative Review Board, but his complaints were disregarded.

Plaintiff spoke to Warden Butler on a few occasions and told her that he was not receiving proper medical treatment for his heart and about his unsanitary cell conditions.  She stated she would look into the matters, but failed to take any action to assist him.

Plaintiff wrote to health care administrator Gail Walls regarding the breathing issues he was having due to his heart condition and requested surgery.  He received a response advising him that Wexford collegial had denied his request and that the medical unit would continue to monitor him on site.  He was told to put in for a sick call if he had any problems.  Walls did not take the necessary steps to ensure Plaintiff received proper healthcare or placement in a sanitized cell.

Plaintiff saw Assistant Warden Brooks, who supervised healthcare, and notified Brooks that he was having issues with breathing and unsanitary cell conditions and was not receiving any results from his complaints.  Brooks stated he would look into the matters but did not.

Plaintiff wrote another grievance to Warden Butler regarding his situation, after which he was sent to an outside hospital to have the test Dr. Trost recommended a year prior.  The outside doctor confirmed that Plaintiff had a hole in his heart and made a diagnosis of ventricular septal defect.  Thereafter, he was sent to an outside hospital a few times but no actions were taken to close the hole in his heart or ensure that he received adequate medical treatment.

Plaintiff submitted an emergency grievance to Warden Lashbrook (Warden Butler's successor) regarding reoccurring chest pain, a lack of a proper medical treatment, and unsanitary cell conditions.  Warden Lashbrook expedited the grievance and Plaintiff was referred to Dr. Siddiqui.  Dr. Siddiqui confirmed an abnormal heartbeat and after reviewing his medicals files, recommended that Plaintiff be urgently referred to an outside hospital.  Plaintiff asked Dr. Siddiqui why no steps were being taken to have him undergo surgery to close the hole in his heart and Dr. Siddiqui stated "the state is broke."  Dr. Siddiqui did not take any action to ensure Plaintiff got the

3

surgery he needed.

In response to his grievance, Warden Lashbrook told him to go through his counselor for a transfer and took no action herself to transfer him or place him in a sanitized cell.

Plaintiff filed a federal lawsuit on July 19, 2017 against the Defendants but it was dismissed for failure to exhaust administrative remedies.  Plaintiff thereafter exhausted his grievances.

Plaintiff was transferred to Pontiac Correctional Center.  Following additional testing, Plaintiff had surgery on July 10, 2020 to close the hole in his heart.  Another surgery was recommended for December 2020.

Based on the allegations in the First Amended Complaint, the Court designates the following claims in this *pro se* action:

Count 1:    Eighth Amendment claim against Butler, Brooks, Walls, Trost, and Siddiqui for exhibiting deliberate indifference to Plaintiff's serious heart condition and against Wexford Health Sources, Inc. for its unconstitutional policy that prevented Plaintiff from receiving treatment for his serious heart condition.

Count 2:    Eighth Amendment claim against Butler, Brooks, and Trost for the unconstitutional conditions of confinement that Plaintiff endured which worsened his medical condition.

Any claim that is mentioned in the First Amended Complaint and not addressed herein is dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

## Preliminary Dismissals

Plaintiff asserts claims against each Defendant in his or her individual and official capacities, but is proceeding only on claims for monetary damages.  When a plaintiff seeks monetary damages against a state official, he must bring the lawsuit against them in his or her

4

individual capacity. *Brown v. Budz*, 904 F.3d 904, 918 (7th Cir. 2005); *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir. 1987).   Therefore, Plaintiff's claims against Defendants in their official capacities are dismissed without prejudice.

## Discussion

### Count 1

Prison officials and medical staff violate the Eighth Amendment's prohibition on cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017).   To state such a claim, a prisoner must allege facts suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.*   "[D]eliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015).   The allegations in the First Amended Complaint are sufficient to proceed on the deliberate indifference claim in Count 1 against Butler, Brooks, Walls, Trost, and Siddiqui.

Plaintiff has not, however, stated a viable claim in Count 1 against Wexford based solely on the allegation that Wexford Collegial denied the additional testing recommended by Dr. Trost. Wexford cannot be held liable based on *respondeat superior*.  Instead, it may be held liable only if it had a policy or practice that caused the alleged violation of a constitutional right. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014).   The corporate policy "must be the direct cause or moving force behind the constitutional violation." *Woodward v. Corr. Med. Servs. of Ill., Inc.,* 368 F.3d 917, 927 (7th Cir.2004).   The complaint allegations do not suggest that Wexford maintained a policy or practice that caused a violation of Plaintiff's constitutional rights. Wexford will therefore be dismissed.

**Count 2**

Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment. *James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). Two elements are required to establish a constitutional violation. First, there must be a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second element requires the plaintiff to establish a defendant's culpable state of mind – deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Id.* at 842. Plaintiff's allegations are sufficient to proceed on the unconstitutional conditions of confinement claim against Butler, Brooks, and Trost.

## Motion for Preliminary Injunction

While the First Amended Complaint was pending preliminary review, Plaintiff filed a motion for preliminary injunction. (Doc. 32). Plaintiff is no longer incarcerated at Menard where the events giving rise to this action occurred. Therefore, any request for injunctive relief related to those claims are moot. *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004) ("[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot.").

Further, to the extent the motion includes allegations pertaining to medical care issues at Pontiac (where Plaintiff is currently incarcerated), those claims are outside the scope of this litigation. Injunctive relief, whether a temporary restraining order or preliminary injunction, is appropriate only if it concerns an issue presented in the underlying lawsuit and seeks relief of the same character sought in the lawsuit. *See Hallows v. Madison County Jail*, No. 18-cv-881-JPG, 2018 WL 2118082, at *6 (S.D. Ill. May 8, 2018) (internal citations omitted); *see also Devose v.*

*Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) ("[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.").  The motion is therefore denied.

### Disposition

The First Amended Complaint survives preliminary review under 28 U.S.C. § 1915A as follows:  Count 1 will proceed against Butler, Brooks, Walls, Trost, and Siddiqui and Count 2 will proceed against Butler, Brooks, and Trost. The official capacity claims against the Defendants are **DISMISSED** without prejudice.   Wexford Health Sources, Inc. is **DISMISSED without prejudice** and the Clerk of Court is **DIRECTED** to **TERMINATE** it as a defendant.

The Motion for Preliminary Injunction (Doc. 32) is **DENIED.**

The Clerk of Court shall prepare for Butler, Brooks, Walls, Trost, and Siddiqui: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff.  If  a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a **continuing obligation to keep the Clerk of Court and the opposing party informed of any change in his address**; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. **Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.** *See* **Fed. R. Civ. P. 41(b).**

Finally, based on the allegations in the First Amended Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  May 17, 2021**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your First Amended Complaint. After service has been achieved, Defendants will

8

enter an appearance and file an Answer to your First Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.