IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN CURRY, #R09761, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 3:20-cv-01137-SMY |
| ) | |
| KIMBERLY BUTLER, ) | |
| TODD BROOKS, ) | |
| GAIL WALLS, ) | |
| MOHAMMED SIDDIQUI, ) | |
| and JOHN TROST, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is before the Court on separate motions for summary judgment for failure to exhaust administrative remedies filed by Defendants John Trost and Mohammed Siddiqui (Doc. 93) and Defendants Kimberly Butler and Gail Walls (Doc. 108). Given the undisputed facts set forth in the parties' written submissions, an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008) is unnecessary. For the following reasons, the motions are **GRANTED**.

### BACKGROUND

Plaintiff Steven Curry filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center. He makes the following allegations in the First Amended Complaint (Doc. 1): Prior to entering IDOC, Plaintiff was stabbed in the heart and underwent emergency open heart surgery. Plaintiff did not have any issues after entering IDOC custody until he was transferred to Menard. While at Menard, he began experiencing shortness of breath, tightness in his chest, weakness throughout his body, and painful

headaches. Dr. Trost confirmed that Plaintiff had an irregular heartbeat and told him further testing was needed. Plaintiff told Dr. Trost that he was living in unsanitary cell conditions including extreme temperatures of 90 to 100 degrees, a lack of proper ventilation, and soiled pillows and mattresses. Dr. Trost told Plaintiff he would submit a request for him to be referred to an outside facility for testing and would contact the administration about his placement in a sanitized cell. Dr. Trost later notified Plaintiff that Wexford denied the request for further testing.

Plaintiff continued to be housed in a cell with poor ventilation, poor air quality, dust, rust, mold, pepper spray residue, soiled pillows, and torn mattresses. He was not provided with cleaning supplies. Plaintiff spoke to Warden Butler on a few occasions and told her that he was not receiving proper medical treatment for his heart and about his unsanitary cell conditions. She stated she would look into the matters, but failed to take any action to assist him.

Plaintiff wrote to health care administrator Gail Walls regarding the breathing issues he was having due to his heart condition and requested surgery. He received a response advising him that Wexford collegial had denied his request and that the medical unit would continue to monitor him on site. He was told to put in for a sick call if he had any problems. Plaintiff notified Assistant Warden Brooks, who supervised the healthcare unit, that he was having issues with breathing and unsanitary cell conditions and was not receiving any results from his complaints. Brooks stated he would look into the matters but did not.

Plaintiff wrote another grievance to Warden Butler regarding his situation, after which he was sent to an outside hospital to have the test Dr. Trost recommended a year prior. The outside doctor confirmed that Plaintiff had a hole in his heart and diagnosed ventricular septal defect. Thereafter, Plaintiff was sent to an outside hospital a few times, but nothing was done to close the hole in his heart or to ensure that he received adequate medical treatment.

Plaintiff then submitted an emergency grievance to Warden Lashbrook regarding reoccurring chest pain, a lack of proper medical treatment, and unsanitary cell conditions. Warden Lashbrook expedited the grievance and Plaintiff was referred to Dr. Siddiqui. Dr. Siddiqui confirmed an abnormal heartbeat and after reviewing Plaintiff's medicals files, recommended that Plaintiff be urgently referred to an outside hospital. However, Dr. Siddiqui did not take any action to ensure Plaintiff got the surgery he needed. In response to Plaintiff's grievance, Warden Lashbrook advised him to go through his counselor for a transfer, but took no action to transfer him or place him in a sanitized cell.[1]

After preliminary review of the First Amended Complaint, Plaintiff proceeds on the following claims (Doc. 19):

Count 1: Eighth Amendment claim against Butler, Brooks, Walls, Trost, and Siddiqui for exhibiting deliberate indifference to Plaintiff's serious heart condition.

Count 2: Eighth Amendment claim against Butler, Brooks, and Trost for the unconstitutional conditions of confinement that Plaintiff endured which worsened his medical condition.

## FACTS

Plaintiff was incarcerated at Menard Correctional Center from August 7, 2013, until April 4, 2018 when he was transferred to Pontiac Correctional Center (Doc. 94-5, pp. 1, 10). He had his first appointment with Dr. Trost regarding his heart condition on April 25, 2014 (*Id.*, p. 2). Dr. Trost's last in-person encounter with Plaintiff regarding his heart condition occurred on March 14,

---

[1] Plaintiff filed a lawsuit on July 19, 2017 against the defendants based on these same allegations, but it was dismissed for failure to exhaust administrative remedies. *See Steven Curry v. Kimberly Butler, et. al.*, 3:17-cv-00751-DRH-RJD (S.D. Ill. July 2, 2018). The Court found that grievances dated November 2, 2014, and May 18, 2015 were procedurally defective. *See Curry*, 3:17-cv-00751 at Docs. 118 and 120. As a result, the issue of exhaustion as to those two grievances has been adjudicated. Also, the Court noted that Plaintiff's grievance dated June 2, 2017, which is at issue in this lawsuit, could not exhaust administrative remedies as to the claims in that lawsuit because Plaintiff had not received a ruling from the Administrative Review Board prior to filing the lawsuit. *Id.* As a result, the Court did not address any substantive or procedural deficiencies in the grievance.

2016 (*Id.*, p. 6).  Plaintiff was seen by an outside cardiologist on June 16, 2016 (*Id.*, p. 16).  In October 2016, Dr. Trost referred Plaintiff for a cardiology follow-up which was approved (*Id.*, pp. 19-20).  Dr. Trost left his employment at Menard on March 17, 2017 (Doc. 94-6, pp. 1-2).  Dr. Siddiqui became the Medical Director at Menard on June 12, 2017 (Doc. 94-6, pp. 1-2).  Plaintiff's first encounter with Dr. Siddiqui regarding his heart condition occurred on June 15, 2017 (Doc. 94-5, p. 9).

### Grievance Documents

Plaintiff filed an emergency grievance dated June 2, 2017 complaining that he was being deprived of proper medical attention for his heart condition and being subjected to unsanitary living conditions (Doc. 94-7, pp. 1-4; Doc. 109-2, pp. 43-46).  He states the nurses, doctors, and medical administrators at Menard are aware of his medical condition.  He requests proper heart monitoring, sanitary living conditions, and a transfer to another prison for physical therapy.  The chief administrative officer (CAO) granted expedited review.  The grievance officer contacted the health care unit (HCU) and Plaintiff was called to the HCU on June 15, 2017 for evaluation of his grievance issues.  The cell house supervisor was also contacted regarding Plaintiff's cell conditions, and a health and safety check was conducted with no issues noted. The grievance officer's Report noted that Plaintiff should contact his assigned counselor to request a transfer review.  The CAO concurred with the Report on June 22, 2017.  The Administrative Review Board (ARB) received the grievance on July 13, 2017 and returned it on July 31, 2017 because it was not submitted within the timeframe required by Department Rule 504.  The ARB noted that because there was no date of incident(s), there was no way to determine the time frame of Plaintiff's allegations, and no cell issue was cited.

Plaintiff filed an emergency grievance on October 25, 2017 regarding medical treatment

4

for his heart condition and the conditions of his cell (Doc. 109-2, pp. 31-35).  The grievance was sent directly to the ARB with a letter addressed to the ARB of the same date.  Plaintiff's October 25, 2017 grievance was received by the ARB on October 31, 2017 and returned on November 9, 2017 for additional information because Plaintiff did not include a copy of any responses at the facility level.

Plaintiff filed no other grievances related to his medical treatment or the conditions of his confinement at Menard prior to his transfer to Pontiac (Doc. 109, p. 4 at ¶ 17; Doc. 109-2, pp. 2-3; Doc. 109-3, pp. 1-5).

## DISCUSSION

Failure to exhaust administrative remedies is an affirmative defense properly raised in a motion for summary judgment to be resolved by the judge.  *Pavey v. Conley,* 544 F.3d 739, 740 (7th Cir. 2008).  Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  FED.R.CIV.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The Prison Litigation Reform Act requires prisoners to exhaust all available administrative remedies prior to filing lawsuits in federal courts with regard to prison conditions.  42 U.S.C. § 1997e(a).  Administrative exhaustion "means using all steps that the agency holds out, and doing so properly."  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

As an inmate in the Illinois Department of Corrections, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, *et seq*. (2017).  The regulations require an inmate to file his grievance with his counselor within sixty days of the discovery of an incident, occurrence, or problem that gave rise to the grievance.  20 ILL. ADMIN. CODE § 504.810(a).  The grievance must "contain factual details

regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c).

If the complaint is not resolved through the counselor, the grievance must be submitted to a grievance officer, who reports his or her findings and recommendations in writing to the CAO. 20 ILL. ADMIN. CODE § 504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with the CAO's response, he files an appeal with the IDOC Director through the ARB. 20 ILL. ADMIN. CODE §504.850(a). The ARB must receive the appeal within thirty days of the date of the CAO's decision. *Id.* The ARB submits a written report of its findings and recommendations to the Director, who then makes a final determination. 20 ILL. ADMIN. CODE § 504.850(d), (e).

### *June 2, 2017 grievance*

In the June 2, 2017 grievance, Plaintiff asserts an ongoing deprivation of medical care and unsanitary living conditions. As it pertains to Dr. Trost, the grievance was not filed within sixty days of the incident, occurrence, or problem that gave rise to the grievance because Dr. Trost left Menard on March 17, 2017. Under the continuing violation theory, Dr. Trost's alleged violations of Plaintiff's constitutional rights ended when he was no longer in a position to provide the medical treatment sought by Plaintiff. *See Heard v. Sheahan,* 253 F.3d 316, 318 (7th Cir. 2001).

Similarly, the grievance is procedurally deficient as to Warden Butler who resigned from Menard in 2016 (Doc. 94-2, p.4). Further, the grievance does not suggest that Warden Butler or any other prison administrator knew about Plaintiff's complaints of inadequate medical care or unsanitary cell conditions and approved, condoned, or turned a blind eye to it. The grievance could not have been directed to, or exhausted administrative remedies against, Dr. Siddiqui because he

did not become the Medical Director at Menard until June 12, 2017 and saw Plaintiff for the first time on June 15, 2017.  See *Barrow v. Wexford Health Sources, Inc.*, 793 F.App'x 420, 423 (7th Cir. 2019) (finding grievances filed before doctor became involved in plaintiff's medical care did not establish exhaustion of available remedies as to claim against doctor).

Additionally, the grievance does not exhaust administrative remedies for the claim against Defendant Walls.  Plaintiff's conclusory and vague assertion that Menard nurses/doctors and medical administrators are aware of his medical condition is insufficient to alert prison officials of his claim that Walls denied him medical care or knew of inadequate medical care and approved, condoned, or turned a blind eye to it.

For these reasons, the June 2, 2017 grievance does not exhaust administrative remedies as to the claim against Trost, Siddiqui, Butler, and Walls in Count 1 or the claim against Trost and Butler in Count 2.

### *October 25, 2017 grievance*

The October 25, 2017 grievance was not fully exhausted because Plaintiff submitted it directly to the ARB without submitting it to the counselor, grievance officer, and CAO.  As a result, the grievance does not serve to exhaust administrative remedies for any claims asserted in this lawsuit.

### *Pontiac grievances*

In his response, Plaintiff references grievances he allegedly filed after he transferred to Pontiac dated September 9, 2018, December 13, 2019, December 23, 2019, February 18, 2020, and May 14, 2020 (Doc. 106, pp. 5-7).  Those grievances were submitted more than sixty days after Plaintiff transferred from Menard to Pontiac in April 2018 (Doc. 94-5, p. 10).  Additionally,

those grievances pertain to medical treatment issues at Pontiac, not Menard (Doc. 106-1, pp. 5, 11, 17).

### *Defendant Brooks*

Although Defendant Brooks has not been served, the Court will address whether Plaintiff exhausted his administrative remedies as to his claims against Brooks.[2] There is nothing in the June 2, 2017 grievance to suggest that Brooks knew of inadequate medical care or unsanitary cell conditions and approved, condoned, or turned a blind eye to it. The October 25, 2017 grievance was not fully exhausted. The Pontiac grievances were submitted outside the sixty-day time frame set forth in § 504.810(a). And Plaintiff did not file any other grievance related to his medical treatment or the conditions of his confinement at Menard prior to his transfer to Pontiac. Accordingly, pursuant to Federal Rule of Civil Procedure 56(f), Plaintiff is notified that summary judgment may and should be granted in favor of Defendants Brook. Plaintiff will be given fourteen days from the date of this Order to submit any documents and/or arguments to the Court as to why Defendant Brooks should not be dismissed for failure to exhaust administrative remedies.

### CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment for Plaintiff's Failure to Exhaust his Administrative Remedies filed by Defendants John Trost and Mohammed Siddiqui (Doc. 93) is **GRANTED** and the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 108) filed by Defendants Kimberly Butler and Gail Walls is **GRANTED**.

---

[2] A judge may grant summary judgment in favor of all defendants even if only some defendants have moved for summary judgment. *See Hunger v. Leininger,* 15 F.3d 664, 669 (7th Cir.1994) ("[a] district judge is authorized to grant summary judgment to a party that has not requested it"). A court may *sua sponte* enter summary judgment in favor of additional nonmoving defendants if they are in a position similar to that of the moving defendants and the motion raised by the moving defendants is equally effective in barring the claim against the nonmoving defendants. *See Bonny v. The Society of Lloyd's,* 3 F.3d 156, 162 (7th Cir.1993).

Defendants Trost, Siddiqui, Butler, and Walls are **DISMISSED without prejudice**. The Clerk of Court is **DIRECTED** to terminate Trost, Siddiqui, Butler, and Walls as parties and enter judgment in accordance with this Order at the close of the case.

Pursuant to Rule 56(f), Defendant Brooks will be dismissed for failure to exhaust administrative remedies unless Plaintiff submits documents and/or other information within fourteen days of the date of this Order establishing that he exhausted his claims against Brooks.

IT IS SO ORDERED.

DATED:  August 9, 2022

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**